UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Core and Main, LP, | Case No. 21-cv-1512 (WMW/KMM) |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| Ron McCabe and Dakota Supply Group, Inc., | |
| Defendants. | |

---

This matter is before the Court on Plaintiff Core and Main, LP's (Core and Main) motion for a temporary restraining order and a preliminary injunction. (Dkt. 5.) For the reasons addressed below, Core and Main's motion is denied.

## BACKGROUND

Core and Main is a Florida limited partnership with its principal places of business in Missouri and Minnesota. Core and Main is engaged in the business of selling fire hydrants, pipes, valves, fittings, water meters and similar products, and providing related services. Defendant Ron McCabe is a Minnesota resident. McCabe, who worked for Core and Main for approximately 4 years, now works for Defendant Dakota Supply Group, Inc. (DSG). DSG, a North Dakota corporation based in Fargo, North Dakota, is engaged in the business of selling waterworks products, including valve fittings, valves, pipes and fire hydrants.

On October 2, 2017, McCabe signed an Employment Agreement setting forth the conditions of his employment with Core and Main. The Employment Agreement includes restrictive covenants, including non-competition and non-solicitation provisions. The Employment Agreement provides, in relevant part:

> You agree that, during your employment by [Core and Main] and for a period of twelve (12) months following the termination of your employment for any reason ("Non-Competition Period") and within a 150 mile radius of each office location from which you have provided services on behalf of the Company ("Restricted Area"), you will not accept employment, engage in providing services or otherwise assist (whether as an employee, independent contractor, consultant, proprietor, partner, director or otherwise), have any ownership or other beneficial interest in, or participate in the financing, operation, management or control of or with, any person, firm, corporation, business entity or business activity that, directly or indirectly, competes with [Core and Main] . . . in the Restricted Area regarding [Core and Main's] business of purchasing, selling or distributing waterworks products and services, . . . . You also agree that, during the Non-Competition Period, you will not, directly or indirectly, (a) solicit or attempt to solicit business from any customer or supplier of [Core and Main] that was a customer or supplier of [Core and Main] during the one-year period prior to the date of your termination and including any prospective customers or suppliers with whom [Core and Main] had contact during such one-year period regarding doing business with [Core and Main]; or (b) solicit or attempt to solicit any such customer or supplier of [Core and Main] to reduce or end their business dealings with [Core and Main] . . . .

McCabe worked for Core and Main from on or about October 6, 2017, through his resignation on June 1, 2021. When McCabe resigned, he deleted all data from the cell phone that Core and Main provided to him for work and returned the cell phone to Core

and Main. Shortly after he resigned, McCabe sent a group text message to some of the Core and Main customers he served stating, "This is Ron McCabe. I no longer work for Core and Main. This is my new phone number. Please don't respond to this text message."

McCabe's employment with DSG as an operations manager commenced on June 7, 2021. While working for Core and Main, McCabe had agreed to lead a June 15, 2021 training session about fire hydrant installation and maintenance at a conference in Park Rapids, Minnesota (Park Rapids Conference). After McCabe resigned from Core and Main on June 1, 2021, Core and Main assigned another employee to lead the training and, in an email to McCabe, demanded that he not attend the Park Rapids Conference. McCabe attended the Park Rapids Conference and led a training session about the installation and maintenance of American Flow Control (AFC) Waterous brand fire hydrants.

Core and Main commenced this action in June 2021, seeking to enforce the restrictive covenants in the Employment Agreement and enjoin McCabe, for 12 months, from directly or indirectly soliciting or competing within a 150-mile radius of the offices from which he provided services on behalf of Core and Main. Core and Main also seeks to enjoin DSG from tortiously interfering with the restrictive covenants between McCabe and Core and Main. If granted, the injunction would prevent McCabe from both attending conferences and providing training on the installation and maintenance of AFC/Waterous fire hydrants.

## ANALYSIS

Core and Main moves for both a temporary restraining order and preliminary injunctive relief. Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of a preliminary injunction or temporary restraining order. The legal standards for a temporary restraining order and a preliminary injunction are the same. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008) ("As this court has explained in past cases, it is well-settled in this circuit that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors, which were set forth in the seminal decision in *Dataphase* . . . ."). A court "may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Defendants McCabe and DSG have filed a response and will be heard at the August 18, 2021 hearing. Accordingly, this Court considers whether a preliminary injunction is warranted.

When determining whether to grant preliminary injunctive relief, a district court considers the four *Dataphase* factors: (1) the threat of irreparable harm to the movant, (2) the probability that the movant will succeed on the merits, (3) the balance between any harm to the movant and the injury that an injunction could inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy," and the party seeking injunctive relief bears the burden of establishing that each factor favors granting such relief.

*Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). The core question in this analysis "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

### I.  Irreparable Harm

Because the irreparable-harm *Dataphase* factor is dispositive, the Court addresses this factor first. Core and Main argues that it will suffer irreparable harm if McCabe and DSG are not enjoined from violating the non-compete and non-solicitation provisions of the Employment Agreement. McCabe and DSG contend that Core and Main fails to show that irreparable harm will occur if it is denied injunctive relief.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To demonstrate a threat of irreparable harm, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Roudachevski*, 648 F.3d at 706 (internal quotation marks omitted). A mere "possibility of harm" is insufficient. *Id.*; *accord S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction.").

Harm suffered from lost customers can be measured by the lost profits on the business of those customers and, "[b]y definition, lost profits are 'reparable' through money damages." *Wells Fargo Ins. Servs. USA, Inc. v. King*, No. 15-CV-4378 (PJS/JJK),

5

2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016); *accord CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (concluding that harm resulting from loss of customers could be remedied through damages); *Gen. Motors Corp.*, 563 F.3d at 319 (same). Typically, "economic loss does not, in and of itself, constitute irreparable harm" to a party unless "the loss threatens the very existence of the [party's] business." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). "The absence of irreparable harm is, by itself, a sufficient reason to deny [a] motion for injunctive relief." *Izabella HMC-MF, LLC v. Radisson Hotels Int'l, Inc.*, 378 F. Supp. 3d 775, 780 (D. Minn. 2019) (citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)).

Core and Main argues that, while working at Core and Main, McCabe persuaded the city of Faribault, a Core and Main customer, to switch from AFC/Waterous fire hydrants to Mueller fire hydrants. Even if Core and Main's allegation is true, these allegations reflect past harm, not imminent future harm that could be prevented by injunctive relief. *See CDI Energy*, 567 F.3d at 403. In addition, the record reflects that McCabe had a minimal role, if any, in Faribault's decision to change from AFC/Waterous fire hydrants to Mueller fire hydrants. Moreover, Core and Main is authorized to sell Mueller fire hydrants, and Core and Main has provided no allegations or evidence that Faribault is planning to buy its Mueller fire hydrants from DSG.[1] Therefore, Core and Main fails to establish irreparable harm based on Faribault switching fire hydrant types.

---

[1] Core and Main argues that Faribault's decision will provide a "potential benefit" to DSG. Speculative harm is insufficient to warrant a preliminary injunction, however. *See Wilson*, 696 F.3d at 779.

Next, Core and Main argues that McCabe caused irreparable harm by teaching at the Park Rapids Conference. Core and Main contends that McCabe used his teaching session to solicit Core and Main's customers. However, McCabe provided training on AFC/Waterous fire hydrants, a type of fire hydrant that DSG does not sell. Based on this fact alone, it is highly speculative that McCabe solicited Core and Main's customers by teaching this class. Moreover, Core and Main does not allege that it actually lost any customers, nor does it provide any evidence of McCabe soliciting customers. Mere speculation that the training at the Park Rapids Conference will lead to a loss of customers does not establish irreparable harm. *See Wilson*, 696 F.3d at 779; *Roudachevski*, 648 F.3d at 706.

Relying on *St. Jude Medical, Inc. v. Carter*, DSG argues that Core and Main is not entitled to an injunction based solely on an alleged breach of a non-competition provision. 913 N.W.2d 678 (Minn. 2018). In *St. Jude*, the Minnesota Supreme Court held that irreparable harm cannot be inferred and does not automatically flow from a breach of a restrictive covenant. *Id.* at 685. There must be "some *proof* of irreparable damage . . . to be adduced in such a case before equitable relief by way of injunction will issue." *Id.* (internal quotation marks omitted) (holding that a court may infer irreparable harm when "customer good will is at stake, when an employee takes business secrets with an intent to benefit from the secrets, or when a risk exists that the secrets will be disclosed in the subsequent employment and result in irreparable damage"). Here, Core and Main has the burden of establishing irreparable harm, and it has not met that burden. As addressed above,

7

DSG does not employ McCabe as a salesperson and there is no evidence that McCabe actually solicited, or that Core and Main actually lost, any customers. Even if Core and Main could demonstrate that it has lost customers, those lost profits could be recovered through damages and would not "threaten the very existence of [Core and Main's] business." *Packard Elevator*, 782 F.2d at 115; *see also Wells Fargo*, 2016 WL 299013, at *8 (holding that when damages are available as a remedy, irreparable harm is not established based on lost customers).

Core and Main contends that, under Minnesota law, "[i]rreparable harm may be inferred from breach of a valid non-compete agreement if the former employee obtained a personal hold on the good will of the former employer." *Bos. Sci. Corp. v. Duberg*, 754 F. Supp. 2d 1033, 1041 (D. Minn. 2010) (internal quotation marks omitted); *see also Rosewood Mortg. Corp. v. Hefty*, 383 N.W.2d 456, 459 (Minn. Ct. App. 1986) (explaining that courts may presume irreparable harm when a professional employee acquires personal influence over clients of their employer). The Court cannot infer irreparable harm here, however, because Core and Main fails to provide any evidence of any specific customer whose goodwill Core and Main lost when McCabe resigned, or over which McCabe acquired personal influence. A *risk* of "harm to customer goodwill" stated in "general, 'conclusory terms' " does "not show a likelihood of irreparable harm that, in turn, would justify issuing a preliminary injunction." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055–56 (D. Minn. 2019) (quoting *Mgmt Registry, Inc. v.*

*A.W. Cos.*, No. 17-5009 (JRT/FLN), 2018 WL 461132, at *6 (D. Minn. Jan. 16, 2018), *aff'd,* 920 F.3d 1181 (8th Cir. 2019)).

Next, quoting *Alside, Inc. v. Larson*, Core and Main contends that proving damages for lost customers "would be most difficult, if not impossible." 220 N.W.2d 274, 278 (Minn. 1974). The facts and circumstances here are distinguishable from those in *Alside*. There was substantial evidence supporting the injunction in *Alside*, including evidence that the defendant "had a unique and intimate relationship" with the plaintiff's customers and defendant's admission "that he tried to transfer the goodwill that he had built up while working for [the plaintiff]." *Id.* at 280. Here, Core and Main has not provided evidence of any customers that were actually lost, nor has Core and Main provided evidence of any actual violations of the restrictive covenants in the Employment Agreement or attempts to exert unique influence over Core and Main's customers. Although exact damages for lost customers may be hard to quantify, Core and Main has not identified a single lost customer. Based on the record before the Court, irreparable harm cannot be inferred.

Core and Main also seeks to enjoin DSG from tortiously interfering with the Employment Agreement between Core and Main and McCabe. If proven, tortious-interference claims generally may be compensable by monetary damages. *See, e.g.*, *Roudachevski*, 648 F.3d at 706–07 (affirming the denial of a preliminary injunction when plaintiff's claims of tortious interference with contract and business expectancy were compensable by monetary damages); *Brookins v. Wissota Promoters Ass'n, Inc.*, 142 F. Supp. 2d 1149, 1152 (D.N.D. 2000) (same). For the reasons addressed above, even if DSG

9

were to tortiously interfere with the Employment Agreement, Core and Main has not demonstrated that any resulting harm would not be compensable by an award of monetary damages.

For these reasons, the irreparable-harm *Dataphase* factor does not support granting Core and Main's request for preliminary injunctive relief against Defendants.

## II. Remaining *Dataphase* Factors

The failure to show irreparable harm is a sufficient basis to deny a preliminary injunction. *Gelco Corp.*, 811 F.2d at 418. Because Core and Main fails to demonstrate irreparable harm with respect to either McCabe or DSG, the Court declines to address the remaining *Dataphase* factors. *See, e.g.*, *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 934–35 (D. Minn. 2016) (denying temporary restraining order based solely on plaintiff's failure to demonstrate irreparable harm); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 922 (D. Minn. 2016) (same).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Core and Main, LP's motion for a temporary restraining order and a preliminary injunction, (Dkt. 5), is **DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 18, 2021                                    s/Wilhelmina M. Wright
                                                                        Wilhelmina M. Wright
                                                                        United States District Judge