UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Core and Main LP,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Ron McCabe and<br>Dakota Supply Group, Inc.<br><br>　　　　Defendants. | Case No. 21-cv-01512-WMW-DTS<br><br>**REPLY MEMORANDUM<br>IN SUPPORT OF DEFENDANTS'<br>JOINT MOTION TO DISMISS, OR,<br>IN THE ALTERNATIVE, FOR<br>SUMMARY JUDGMENT** |

As set forth below, Core & Main's[1] opposition to Defendants' Motion to Dismiss is ineffective and its Complaint must be dismissed, with prejudice, as a matter of law.

**I.　Core & Main's Cannot Escape the Condition Precedent It Drafted Requiring Its CEO to Sign the Employment Agreement**

Core & Main chose to attach and apply its Compensation Plan Rules to the Employment Agreement. (Compl. Ex. A at "General Rules-Outside Sales Representative Incentive Plans") These rules imposed a condition precedent requiring that to "exist[]" and become effective, the Employment Agreement (a potential "contractual agreement[]") must be signed by Core & Main's CEO. "[N]o contract was formed" because Core & Main did not fulfill the condition precedent it drafted and chose to apply. *Cargill Inc. v. Jorgenson Farm*s, 719 N.W.2d 226, 232-33 (Minn. Ct. App. 2006). Without a contract, Core & Main's contract-based claims must be dismissed. *Id.*; *Nilfisk,*

---

[1] Abbreviations from Defendants' initial memorandum (ECF 25) are used herein. Plaintiff's opposition memorandum (ECF 52) will be cited as "Pltf's Opp." and declarations submitted in this action by Ron McCabe will be cited as "First McCabe Decl." (ECF 26) or "Second McCabe Decl." (ECF 35).

*Inc. v. Liss,* No. 17-CV-1902(WMW/FLN), 2017WL7370059, at *4 (D.Minn. June 15, 2017).

The parties agree on the mater facts, including that:

(1) Core & Main drafted the Compensation Plan Rules;

(2) Core & Main attached these rules to the Employment Agreement, both when initially offered and as Complaint Exhibits A and D;

(3) Core & Main dictated through the Compensation Plan Rules that "No contractual agreements of any kind" would "exist between the Company and [any] Sales Representative that is not in writing and ***signed by the CEO***";[2] and

(4) Core & Main's CEO did not sign the Employment Agreement despite his ability to do so. (First McCabe Decl. Ex. 1.)

Opposing this motion, Core & Main asks the Court to ignore these facts and apply inapposite case law interpreting business-to-business contracts and decisions that did not involve a condition precedent. For example, its discussion of *Taylor Inv. Corp. v. Weil* ("*Taylor*"), fails to note that the contract at issue related to software previously delivered and installed and was subject to the Uniform Commercial Code ("UCC"). (Pltf's Opp. pp. 5-6;) *Taylor*, 169 F.Supp.2d 1046, 1052-55 (D.Minn. 2001). Nor does Core & Main mention that Minnesota's "UCC provides a more liberal standard for formation of contracts than does the common law of contracts and allows any reasonable manner of

---

[2] Compl. Ex. A at Compensation Plan Rules §IV. Core & Main limited certain provisions of the Compensation Plan Rules to commissions and Sales Representative pay. (*See, e.g.*, *id*. §§I, II.1. However, it drafted Section IV to apply more broadly, to apply to "contractual agreements ***of any kind*** . . . between the Company and [a] Sales Representative," such as McCabe. (*Id*. §IV (emphasis added).)

acceptance to bind both promisor and promisee." *Holman Erection Co. v. Orville E. Madsen & Sons*, 330 N.W.2d 693, 697 (Minn. 1983). However, even under the UCC's more lenient formation standard, specific language may constitute a condition precedent preventing contract formation. *Dataserv Equip., Inc. v. Tech. Fin. Leasing Corp.*, 364 N.W.2d 838, 841 (Minn. Ct. App. 1985). In *Dataserv Equip.*,e the Minnesota Court of Appeals considerd a contract subject to the UCC and found a party's

> "acceptance" was...ineffective because [the agreement] was not signed in accordance with the offer's conditions. While it is true that [the UCC] does not require a signed agreement prior to formation of a contract, where the parties know that the execution of a written contract was a condition precedent to their being bound, there can be no binding contract until the written agreement was executed.

*Id*.[3] Likewise in *Cargill Inc. v. Jorgenson Farms*, the Minnesota Court of Appeals found "no contract was formed" merely because Cargill had asked the other party to

> Please sign and date the original and attached copy of this contract. The original must be returned to [Cargill] at the above-referenced address . . ."

719 N.W.2d 226, 233 (Minn. Ct. App. 2006).

Core & Main also argues it may avoid its condition precedent by citing cases that involved no condition precedent. (Pltf's Opp. pp. 6-7 (citing, e.g., *Rust Consulting, Inc. v. Schneider Wallace Cottrell Konecky Wotkyns, LLP*, No. 17-4981(DSD/TNL), 2019WL3456891, at *3-4 (D.Minn. July 31, 2019); *Paisley Park Enters., Inc. v. Boxill,* 253 F. Supp. 3d 1037, 1044 n.4 (D.Minn. 2017).) The parties agree that Minnesota law

---

[3] The later signature by an unauthorized agent of Core & Main, unknown to McCabe, prevented contract formation because the Compensation Plan Rules gave McCabe "reason to know" that only the CEO of Core & Main had "authority to bind the corporation" preventing the enforceability of the Employment Agreement. *Lyon Fin. Servs., Inc. v. MBS Mgmt. Servs., Inc.*, No. CIV. 06-4562 PJS-JJG, 2007WL2893612, at *5 (D.Minn. Sept. 27, 2007).

does not generally require both parties (or a specific officer) to sign a contract. However, as noted in Core & Main's own parenthetical regarding *Webb Publ'g Co. v. Fosshage*, the existence of a condition precedent depends on the language at issue. . (Pltf's Opp. p. 7 (citing 426 N.W.2d 445 (Minn. Ct. App. 1988)). The existence of a condition precedent depends on the specific language at issue and an employer need not sign an agreement it offered without specific language to justify the condition. (*Id*.)

Ironically, after arguing inapposite law dictates its own condition precedent could not prevent formation of the Employment Agreement (Pltf's Opp. pp. 4-7), Core & Main takes the opposite position, citing **applicable law** in its next argument. (Pltf's Opp. pp. 8-9). Seeking to avoid the operation of the Noncompetition Agreement's Section 9 ("Section 9"), Core & Main asserts that it may choose which conditions precedents were required before the Employment Agreement became effective. (Pltf's Opp. pp. 8-9 (citing *Lake Co. v. Molan*, 131 N.W.2d 734 (Minn. 1964); *Nat'l Union Fire Ins. v. Schwing Am., Inc.* ("*National Union*"), 446 N.W.2d 410 (Minn. App. 1989).) However, Core & Main does not attempt to explain how the plaintiff in *National Union* could not "avoid the consequences" of its failure to fulfill the condition precedent it "chose," while Core & Main may choose to avoid the condition precedent it chose to include in the Compensation Plan Rules. *National Union*, 446 N.W.2d at 413. Nor does Core & Main allege McCabe was aware that Core & Main's CEO had not signed the agreement receiving Exhibit A to the Complaint, preventing any waiver under Minnesota law. *Id*. at

413-14; (Compl. Ex. D (enclosure was not signed by any Core & Main representative); Second McCabe Decl. ¶5.) Conditions precedent may not be avoided for convenience.[4]

"[T]he rights and responsibilities of the parties are to be determined by examining the four corners of the relevant documents." *Fox Sports Net Minnesota, LLC v. Minnesota Twins P'ship*, No. CIV. 01-961DSDSRN, 2002WL1001057, at *4 (D.Minn. May 6, 2002), aff'd sub nom. 319 F.3d 329 (8th Cir. 2003). "Unambiguous contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999).[5] Minnesota law requires the fulfillment of any condition precedent related to contract formation found in the language at issue. *Regions Treatment Ctr., LLC v. New Stream Real Est., LLC*, No. CIV. 13-1752 ADM/LIB, 2013WL4028148, at *4 (D.Minn. Aug. 7, 2013); *Bergstrom v. Sambo's Restaurants, Inc.,* 687 F.2d 1250, 1257 n. 10 (8th Cir. 1982).

---

[4] Because the Employment Agreement and Compensation Plan Rules were offered together and "relat[ed] to the same transaction [they must] be considered and construed together" and, if a contract was formed, must be considered "'one contract or instrument'" even without aby "'reference to one another.'" *St. Jude Med. S.C., Inc. v. Tormey*, No. CV 11-327 (MJD/TNL), 2012WL13028910, at *3 (D.Minn. Jan. 26, 2012)). In addition, employment policy language "may preclude contract formation" through a separate policy provision and such effect is a question of law for the Court. *Koelsch v. Am. Red Cross*, No. C9-95-2723, 1996WL291619, at *1 (Minn. Ct. App. June 4, 1996).

[5] The language here is clear and would require a condition precedent even in the context of a business-to-business contract. Minnesota law cannot apply a more lenient standard regarding conditions precedent, to the Employment Agreement's "disfavor[ed], cautiously considered, and carefully scrutinized" restrictive covenants than applied to business-to-business contract. *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 898 (Minn. 1965). Restrictive covenant may not extend beyond their express language and ambiguities must be construed against the drafter and in favor of competition. *See Ecolab, Inc. v. Ford*, No. C0-94-1207, 1994WL510121, at *3 (Minn. Ct. App. Sept. 20, 1994).

Any claims dependent on the Employment Agreement must be dismissed because the Complaint and its exhibits show its formation was subject to a condition precedent selected and drafted by Core & Main that was never fulfilled. The Employment Agreement—a proposed contractual agreement between a sales representative (McCabe) and Core & Main—was never formed and never "exist[ed]" because Core & Main's CEO did not sign the agreement. Core & Main's claims dependent on the Employment Agreement (Counts II-IV) must be dismissed as a matter of law.

## II.  Even if the Employment Agreement Once Existed, It Was Superseded

The Noncompetition Agreement signed by McCabe *and* Core & Main's CEO superseded the Employment Agreement as a matter of law. Core & Main argues alternatively, that the Employment Agreement's alleged formation on October 10, 2017, or its subject matter prevented application of Section 9. (Pltf's Opp. p. 9.) These arguments fail under Section 9's plain language and the allegations pleaded in the Complaint.

Core & Main asks the Court to find Section 9 only supersedes "prior," final contracts or agreements. (*Id*.) However, Section 9 language cannot bear this narrow application. While the provision would supersede final contract, Section 9's two clauses operate far more broadly than Core & Main argues. Section 9's first clause declares that the Noncompetition Agreement is the "entire agreement by and between the parties pertaining to the subject matter" of that agreement. Its second clause more broadly operates to "supersedes all prior or ***contemporaneous*** agreements, ***letters of intent, understandings, negotiations and discussions*** <u>***of the parties***</u>, whether oral or written"

without any limitation regarding any subject matter. Core & Main drafted the language of Section 9, rather than more common language limiting the application of an integration provision's second clause to the agreement's subject matter referenced earlier in the provision. *See Borgersen v. Cardiovascular Sys., Inc.*, 729 N.W.2d 619, 622 (Minn. Ct. App. 2007) (integration provision stating the "agreement embodies the entire agreement and understanding among the parties relative to subject matter hereof and supersedes all prior agreements and understandings relating ***to such subject matter***."); *Pine River Performance L.P. v. Kuhn*, No. CV 16-3102 ADM/SER, 2017WL2821539, at *2 (D.Minn. June 29, 2017) (integration provision stating the "Agreement...constitutes the entire understanding and agreement among the [parties] with respect to the subject matter hereof, and supersedes all other prior agreements and understandings among the [parties] or between any of them with respect ***to such subject matter***."); *Outsource Servs. Mgmt., LLC v. Ginsburg*, No. CIV. 08-5897 DWF/FLN, 2010WL5088190, at *9 (D.Minn. Dec. 7, 2010) (integration provision stating the "Agreement...comprises the entire agreement of the parties on the subject matter hereof and supersedes and replaces all prior agreements, oral and written, ***on such subject matter***."). Core & Main could have similarly limited Section 9's second clause, but chose to more broadly "supersede[] all prior or contemporaneous agreements, letters of intent, understandings, negotiations and discussions ***of the parties***, whether oral or written" on any subject and both "prior or contemporaneous [final, effective] agreements," as well as "all prior or contemporaneous...letters of intent, understandings, negotiations and discussions of the parties, whether oral or written." Regardless of whether the Employment Agreement was

7

finalized or merely an incomplete negotiation or offer, it did not become effective and was superseded by Section 9.[6]

Even if Section 9's second clause was limited by subject, Section 9 would have superseded the Employment Agreement because its "subject matter" was identical to the Noncompetition Agreement's subject matter. Accepting the Complaint's alegations as true, Core & Main alleged that it asked McCabe to sign the Employment Agreement to prevent McCabe from unfairly competing with Core & Main after the sale of Minnesota Pipe's customer lists and customer goodwill. (Compl. ¶¶1-5; Pltf's Opp. P. 11-12 discussed below.) Moreover, the Complaint's contract claims expressly incorporate case law only applicable to restrictive covenants executed related to the sale of business. (*Id.* ¶¶20, 34 and Prayer for Relief ¶1 (each citing or quoting *Haynes v. Monson*, 224 N.W.2d 482, 483-84 (Minn. 1974)).) Core & Main cannot now abandon its verified Complaint allegations regarding the intent and subject of the Employment Agreement that are the same as its belated arguments regarding the subject of the Noncompetition Agreement. In sum, Section 9 would have superseded and eliminated the Employment Agreement even if it had become effective.

---

[6] Even if the Employment Agreement was not a letter of intent, understanding, negotiation or discussions superseded by Section 9—it was—the plain meaning of "contemporaneous" in Section 9 would have prevented formation of the Employment Agreement between October 2 through October 10, contemporaneous with the Noncompetition Agreement. *See In re Mason*, 189 B.R. 932, 937–38 (Bankr. N.D. Iowa 1995).

### III. Core & Main's Contract-Based Claims Must be Dismissed Because It Pleaded No Interests Sufficient to Justify Its Restrictions in Its Complaint

To survive a motion to dismiss, Core & Main's complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action....'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state its contract claim, Core & Main was required to plead allegations that could show the Employment Agreement's restrictive covenants are necessary to protect customer "goodwill, trade secrets, and[/or] confidential information." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 456 (Minn. Ct. App. 2001); *Bennett*, 134 N.W.2d at 898.

Core & Main cites only paragraphs 2 and 5 of its Complaint regarding such an interest. (Pltf's Opp. P. 11-12.) Citing paragraph 2, it argues the Employment Agreement's covenants were necessary because "McCabe has a 'longstanding' interest in selling waterworks products to customers and 'had developed longstanding relationships with customers, including for [*sic*] over 30 years of selling waterworks products.'" (*Id*. p. 11 (citing Compl. ¶2.) However, paragraph 2 is specifically limited to "longstanding relationships" allegedly formed by McCabe through "Minnesota Pipe." Even assuming this allegation demonstrates an interest related to customer goodwill, the allegation could not justify a restriction beyond the provisions of the Noncompetition Agreement. The parties agree that Core & Main drafted the Noncompetition Agreement to protect this interest and through that agreement demonstrated (as to McCabe) that such interest would only justify a two-year restriction without more. Any longer restriction must depend on

additional and different allegations without failing as a matter of law as "broader than necessary to protect" the interest alleged and unenforceable as a matter of law. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998); *Klick v. Crosstown State Bank, Inc.*, 372 N.W.2d 85, 87 (Minn. Ct. App. 1985).

The only alleged interest cited by Core & Main is that McCabe "sold water, wastewater and sewer products for Core & Main out of locations across Minnesota,"...and "generated thousands of dollars business [*sic*] with Core & Main customers." (Pltf's Opp. pp. 11-12 (citing Compl. ¶5.) This interest cannot succeed in extending Core & Main's interest beyond the two-year Noncompetition Agreement. A Walmart cashier or a salesperson in one of its departments, undoubtedly generates "thousands of dollars [of] business" for Walmart, but such salesperson holds or controls no customer goodwill that might justify a Minnesota noncompete. Because Core & Main's Complaint cites no interest that could justify the Employment Agreement's restrictions, and such interests are known to Core & Main without discovery, its attempts to enforce the Employment Agreement's restrictive covenants fail as a matter of law. *See, e.g.*, *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F.Supp.3d 1037, 1055–56 (D.Minn. 2019); *Virtual Radiologic Corp. v. Rabern*, No. 20-CV-0445 (PJS/BRT), 2020WL1061465, at *3 (D.Minn. Mar. 5, 2020).

### IV. Core & Main Claims Is Not Entitled to Discovery Pursuant to Rule 56(d)

Core & Main's arguments seeking discovery pursuant to Rule 56(d) also fail. As an initial matter, the only evidence beyond the pleadings necessary for determination of this Motion relates to Core & Main's Count I, alleging breach of the duty of loyalty. This

claim must be dismissed based because the undisputed declarations of McCabe and Tom Judd, the only individuals with any knowledge of the material facts regarding this claim demonstrate the Complaint must be dismissed without discovery. (First McCabe Decl. ¶6; Second McCabe Decl. ¶4; Judd Decl. ¶¶2-6.) Rule 56(d) "'is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that [its] opposition is meritorious.'" *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1050 (8th Cir. 2012). "Rule 56(d) does not condone [the] fishing expedition" sought by Core & Main that "merely hopes to uncover some possible evidence" that could support its unsupported claims. *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018). Rule 56(d) "does not require trial courts to allow parties to conduct discovery before entering summary judgment." *U.S. Through Small Bus. Admin. v. Light*, 766 F.2d 394, 397 (8th Cir. 1985). Core & Main's request for discovery must be denied because it does not and cannot "show what additional evidence would prove [its] claim[s] meritorious." *Toben*, 751 F.3d at 895. Rule 56(d) likewise does not prevent dismissal of claims based on the insufficiency of Core & Main's own allegations regarding matters within its knowledge or the undisputed language of the documents attached or embraced by the Complaint.

## V.     Core & Main's Claims Otherwise Fail

Even if it were enforceable, the Complaint's contract claims must be dismissed because they offer no plausible violation of the Employment Agreement. The failure of its contract claims likewise mandates dismissal of the Complaint's Count IV. And Core & Main's argument regarding Count V does not attempt to cite allegations demonstrating

11

the five elements of a claim for tortious interference with prospective economic advantage, because none are pleaded in the Complaint. Defendants' Motion to Dismiss should be granted and Core & Main's Complaint should be dismissed with prejudice.

Dated: August 23, 2021                                                  **CROSSCASTLE PLLC**

*/s/Samuel W. Diehl*
Samuel W. Diehl (#0388371)
333 Washington Avenue North
Suite 300-9078
Minneapolis, MN 55401
p. 612.412.4175
f. 612.234.4766
sam.diehl@crosscastle.com

***Counsel for Defendants Ron McCabe and Dakota Supply Group, Inc.***

4839-1137-7399, v. 3