UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Core and Main, LP,

                                    Plaintiff,

        v.

Ron McCabe and Dakota Supply Group,
Inc.,

                                    Defendants.

Case No. 21-cv-1512 (WMW/LIB)


**ORDER**

---

Before the Court is Defendants Ron McCabe and Dakota Supply Group, Inc.'s (DSG) motion to dismiss Plaintiff Core and Main, LP's (Core and Main) complaint, or in the alternative, for summary judgment.  (Dkt. 24.)  For the reasons addressed below, the Court grants Defendants' motion to dismiss Counts II, III, IV, and V, and denies Defendants' motion to dismiss Count I.

**BACKGROUND**

Core and Main is a Florida limited partnership that supplies water, wastewater, drainage, and fire protection products and services.  Core and Main purchased the assets of the Minnesota Pipe and Equipment Company in 2017.  McCabe was one of Minnesota Pipe and Equipment Company's owners.  Core and Main hired McCabe as a salesperson after it purchased Minnesota Pipe and Equipment Company.

McCabe and Core and Main executed an Employment Agreement on October 5, 2017.  The Employment Agreement contains a noncompetition provision, which prohibits McCabe from competing with Core and Main during his employment and for twelve

months after the termination of his employment.  On October 6, 2017, Core and Main and

McCabe executed a Noncompetition Agreement, which required a twenty-four-month

period of noncompetition from the date of the execution of the Noncompetition

Agreement.[1]

In early 2021, Core and Main learned from American Flow Control (AFC), one of

its fire hydrant suppliers, that McCabe had encouraged a Core and Main customer to stop

using AFC fire hydrants and switch to using fire hydrants made by Mueller, a competitor

of AFC.  Core and Main alleges that this conduct was significant because it could damage

the relationship between Core and Main and AFC, which provides Core and Main with

95 percent of its fire hydrants.  Core and Main also alleges that McCabe's encouragement

benefitted DSG, which could supply AFC fire hydrants only in a small part of Minnesota

but could supply Mueller fire hydrants throughout the state.

On June 1, 2021, McCabe resigned from Core and Main.  After his resignation,

McCabe sent text messages to multiple individuals, including his Core and Main

---

[1]    McCabe filed a declaration in support of Defendants' motion to dismiss and attached the Noncompetition Agreement.  Although Core and Main did not attach the Noncompetition Agreement to its complaint, the Court may nonetheless consider it.  *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." (internal quotation marks omitted)).  Because the Noncompetition Agreement, whose authenticity Core and Main does not dispute, is integral to understanding the scope of the noncompetition agreement between the parties, the Court may consider the Noncompetition Agreement without converting Defendants' motion to dismiss into a motion for summary judgment.

customers, informing them of his new telephone number and requesting that they not respond to his message.  One week later, on June 7, 2021, McCabe began working at DSG as an operations manager.  On June 15, 2021, McCabe presented a training on fire hydrant installation and maintenance at a conference.

Core and Main commenced this action against Defendants in June 2021, advancing five claims to relief.  Count I alleges that McCabe breached his duty of loyalty.  Count II alleges that McCabe breached his duty of confidentiality.  Count III alleges that McCabe breached his employment contract with Core and Main.  Count IV alleges that DSG tortiously interfered with the contractual relationship between Core and Main and McCabe.  Count V alleges that DSG tortiously interfered with Core and Main's prospective contractual relationships.  Defendants move to dismiss Core and Main's complaint for failure to state a claim on which relief can be granted.  In the alternative, Defendants move for summary judgment as to Core and Main's duty of loyalty claim.

## ANALYSIS

A complaint must be dismissed if it fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief

above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions that are couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678–79.

### I.      Breach of the Duty of Loyalty (Count I)

Defendants challenge Core and Main's allegations pertaining to McCabe's alleged breach of the duty of loyalty.

"An employee's duty of loyalty prohibits her from soliciting the employer's customers for herself, or from otherwise competing with her employer, while she is employed." *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). Core and Main alleges that while McCabe was still employed with Core and Main, McCabe encouraged a Core and Main customer to switch fire hydrant suppliers from a supplier that provided Core and Main with 95 percent of its fire hydrants to a supplier that benefitted DSG, one of Core and Main's competitors. Although Core and Main does not allege that McCabe directly competed with Core and Main, it alleges that McCabe's actions could have harmed Core and Main and favored DSG, a competitor. Core and Main also alleges that McCabe began working for DSG soon after the alleged breach occurred. McCabe's employment with DSG could lend further support to Core and Main's duty-of-loyalty claim. Drawing all reasonable inferences in Core and Main's favor, McCabe's alleged actions could constitute a breach of the duty of loyalty.

Defendants have requested, in the alternative, that the Court grant summary judgment.  But because the parties have not conducted discovery, the Court declines Defendants' invitation to convert the motion to dismiss into a motion for summary judgment.

Accordingly, Defendants' motion to dismiss Core and Main's duty-of-loyalty claim (Count I) is denied.

## II.     Breach of the Duty of Confidentiality (Count II)

Defendants argue that Core and Main fails to state a claim for a breach of the duty of confidentiality.  A common-law duty of confidentiality arises out of the employer-employee relationship when the employer has provided "fair notice of the confidential nature of the relationship and what material is to be kept confidential," and when the employer has treated the information as confidential.  *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 903 (Minn. 1983) (internal quotation marks omitted).

Core and Main alleges that McCabe breached the duty of confidentiality by informing Defendants' attorney about Core and Main's internal billing practices.  Core and Main relies on the Employment Agreement, pursuant to which McCabe agreed "to keep confidential all information of the Company and its affiliates," including "know-how relating to [the] Company and/or its business" or "practices."  Core and Main alleges that counsel for Defendants sent Core and Main a correspondence that referenced "concerns regarding [Core and Main's] business practices raised by Mr. McCabe with [Core and Main] on June 1."  Core and Main attaches McCabe's June 1 resignation email as support.  But McCabe's resignation email does not contain any information about Core

5

and Main's billing practices, other than a vague reference to "issues with certain people and practices at Core and Main" and a request to receive commissions on products sold to date. The letter contains no specifics about Core and Main's business or billing practices. Core and Main's vague factual allegations do not plausibly allege a breach of the duty of confidentiality.

Accordingly, Defendants' motion to dismiss Core and Main's breach-of-confidentiality claim (Count II) is granted.

### III.    Breach of Contract (Count III)

Defendants argue that the Employment Agreement never became effective and that, even if it had become effective, the Noncompetition Agreement superseded the Employment Agreement's noncompetition provision.

"The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to [plaintiff's] right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). "[I]f a contract is a complete integration of the parties' agreements, prior agreements within the scope of the contract are discharged regardless of consistency." *Stromberg v. Smith*, 423 N.W.2d 107, 109 (Minn. Ct. App. 1988) (emphasis omitted).

On October 2, 2017, McCabe signed the Employment Agreement. A representative from Core and Main signed the Employment Agreement on October 5, 2017. The Employment Agreement includes a noncompetition provision effective during McCabe's employment and for twelve months thereafter. On October 6, 2017, Core and

6

Main and McCabe executed a contract titled "Noncompetition Agreement." The Noncompetition Agreement provides that McCabe shall not compete with Core and Main for a term of 24 months after the execution of the Noncompetition Agreement. As such, the Noncompetition Agreement expired on October 6, 2019. The Noncompetition Agreement also provides that "[t]his Agreement constitutes the entire agreement by and between the parties pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, letters of intent, understandings, negotiations and discussions of the parties, whether oral or written."

Core and Main argues that the Noncompetition Agreement did not supersede the noncompete clause in the Employment Agreement because the subject matter of the Noncompetition Agreement was "Core & Main's purchase of Minnesota Pipe [and Equipment Company]." But "while extrinsic evidence may be admissible to clarify ambiguous terms in a written contract, it is not admissible to vary terms whose meaning is plain." *Hayle Floor Covering, Inc. v. First Minn. Const. Co.*, 253 N.W.2d 809, 812 (Minn. 1977). The contract is titled "Noncompetition Agreement," and the contents of the contract all pertain to noncompete obligations. The most natural reading of "the subject matter hereof" is that it applies to the sole subject of the agreement—noncompetition. The merger clause in the Noncompetition Agreement unambiguously reflects that the Noncompetition Agreement is the final agreement between the parties as to the subject of noncompetition. The Noncompetition Agreement's two-year

noncompetition period, therefore, supersedes the Employment Agreement's noncompetition clause.[2]

Core and Main alleges that McCabe breached the noncompetition provisions in the Employment Agreement by soliciting Core and Main's customers during 2021. But the Noncompetition Agreement, which superseded the noncompetition clause of the Employment Agreement, provides for a two-year restriction on competition from the date of the agreement, October 6, 2017. The noncompetition restriction expired on October 6, 2019. Because McCabe had no contractual duty to refrain from competition in 2021, Core and Main has not alleged that McCabe breached a contractual obligation.

Accordingly, Defendants' motion to dismiss Core and Main's breach-of-contract claim (Count III) is granted.

---

[2]     Core and Main also argues that the Employment Agreement became effective *after* the Noncompetition Agreement because the Employment Agreement included multiple conditions precedent, which were not satisfied until October 10, 2017, three days after the execution of the Noncompetition Agreement. As a result, Core and Main argues, the Noncompetition Agreement cannot supersede the Employment Agreement. But the Employment Agreement undisputedly was fully *executed* before the Noncompetition Agreement. Moreover, as Defendants observe, the Noncompetition Agreement's merger clause included "contemporaneous agreements . . . understandings, negotiations and discussions of the parties." Whether or not the Employment Agreement had become effective when the Noncompetition Agreement was executed, the Employment Agreement's noncompetition provision was at least a contemporaneous agreement or understanding between the parties when they signed the Noncompetition Agreement, because both McCabe and a representative from Core and Main signed the Employment Agreement before they signed the Noncompetition Agreement. Therefore, Core and Main's argument that the Noncompetition Agreement did not supersede the Employment Agreement's noncompetition provision is unavailing.

## IV.   Tortious Interference with Contractual Relationships (Count IV)

Defendants argue that Core and Main fails to state a claim for tortious interference with contractual relationships because Core and Main fails to allege that McCabe breached an enforceable contract.   To state a claim of tortious interference with a contractual relationship, a plaintiff must allege (1) the existence of a contract, (2) that the defendant had knowledge of the contract, (3) that the defendant intentionally procured the breach of the contract, (4) that the defendant lacked justification, and (5) that damages resulted therefrom.  *Snowden v. Sorensen*, 75 N.W.2d 795, 799 (Minn. 1956).

Core and Main alleges that DSG tortiously interfered with its Employment Agreement with McCabe because DSG hired McCabe so as to avail itself of the business relationships McCabe developed at Core and Main, in violation of McCabe's noncompetition obligations.  But as addressed above, the wrongful solicitation allegations in the complaint pertain to McCabe's conduct during 2021, two years after McCabe's contractual noncompetition obligations expired.  *See supra*, Part III.  Core and Main fails to allege a claim for tortious interference with contractual relationships because it fails to allege the existence of a contractual noncompete obligation during the period in which the alleged tortious interference occurred.

Core and Main also alleges that DSG tortiously interfered with the confidentiality provisions of Core and Main's contract with McCabe by "solicit[ing] confidential billing practices information."  But as addressed above, Core and Main fails to allege any facts that support a plausible claim that McCabe breached the confidentiality provision in the

Employment Agreement.  *See supra*, Part II.  Therefore, Core and Main fails to state a claim for tortious interference with contractual relationships.

Defendants' motion to dismiss Core and Main's tortious interference with contractual relationships claim (Count IV) is granted.

## V.   Tortious Interference with Prospective Contractual Relationships (Count V)

Defendants argue that Core and Main fails to allege sufficient facts to state a claim for tortious interference with prospective contractual relationships.

To state a claim for tortious interference with prospective contractual relationships, a plaintiff must allege that (1) the plaintiff had a reasonable expectation of economic advantage, (2) the defendant knew of the plaintiff's reasonable expectation, (3) the defendant intentionally interfered with the plaintiff's reasonable expectation, (4) the defendant's interference was either independently tortious or in violation of a state or federal statute or regulation, (5) it is reasonably probable that the plaintiff would have realized the economic advantage or benefit absent the defendant's action, and (6) the plaintiff sustained damages.  *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).  Core and Main alleges that DSG interfered with its prospective contractual relationships by attempting to solicit customers through McCabe, in violation of McCabe's noncompetition obligations.  But as addressed above, the operative noncompetition obligations that bound McCabe expired in October 2019, nearly two years before McCabe's employment with Core and Main ended and before any of the conduct alleged in the complaint occurred.  *See supra*, Part III.  Therefore, any

10

interference by DSG in the realization of Core and Main's economic advantage could not have been wrongful.

For these reasons, Defendants' motion to dismiss Core and Main's tortious interference with prospective contractual relationships claim (Count V) is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Core and Main's complaint, (Dkt. 24), is **GRANTED** as to Counts II, III, IV, and V, and **DENIED** as to Count I.


Dated:  December 29, 2021                          s/Wilhelmina M. Wright
                                                   Wilhelmina M. Wright
                                                   United States District Judge