UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Core and Main, LP, | Case No. 21-cv-1512 (WMW/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Ron McCabe and Dakota Supply Group, Inc., | |
| Defendants. | |

---

Before the Court is the motion to dismiss filed by Defendants Ron McCabe and Dakota Supply Group, Inc. (collectively "Defendants"). (Dkt. 123.) In response to the Defendants' motion to dismiss, Plaintiff Core and Main, LP, filed an amended complaint. (Dkt. 135.) However, uncertain if they were permitted to file the amended complaint without the Court's permission, Core and Main also moved to amend the complaint as an alternative. (Dkt. 138.) Defendants oppose amendment of the complaint and move to strike the amended complaint. (Dkt. 153.) For the reasons addressed below, the Court (1) denies Core and Main's motion to amend, (2) grants Defendants' motion to strike and (3) denies Defendants' motion to dismiss.

## BACKGROUND

Core and Main, a Florida limited partnership, is a supplier of water, wastewater, drainage and fire protection products. Defendant McCabe was part-owner of a company called Minnesota Pipe and Equipment Company. Core and Main purchased the assets of

Minnesota Pipe and Equipment Company in 2017. After the sale, Core and Main hired McCabe as a salesperson.

McCabe and Core and Main executed an Employment Agreement on October 5, 2017. The Employment Agreement includes a noncompetition provision, which prohibits McCabe from competing with the company during his employment and for 12 months after the termination of his employment. On October 6, 2017, Core and Main and McCabe executed a Noncompetition Agreement, which provided for a 24-month period of noncompetition from the date the agreement was executed.

In early 2021, Core and Main learned from one of its fire hydrant suppliers, American Flow Control ("AFC"), that McCabe had encouraged a Core and Main customer to stop using AFC fire hydrants and to use fire hydrants made by Mueller, a competitor of AFC. Core and Main alleges that McCabe's conduct had the potential to damage the relationship between Core and Main and AFC, which provides Core and Main with 95 percent of its fire hydrants. Core and Main also alleges that McCabe's encouragement benefitted Defendant Dakota Supply Group ("DSG"), a supplier of Mueller fire hydrants throughout Minnesota.

McCabe resigned from Core and Main on June 1, 2021. After his resignation, Core and Main alleges that McCabe sent text messages to his Core and Main clients informing them of his new telephone number and requesting that they not respond to his message. Shortly after, McCabe began working at DSG as an operations manager. A few days after McCabe began working at DSG, McCabe presented a training event on fire hydrant installation and maintenance at a conference.

Core and Main commenced this action against Defendants on June 24, 2021, advancing five claims for relief. Count I alleges that McCabe breached his duty of loyalty, and Count II alleges that McCabe breached his duty of confidentiality. Count III claims that McCabe breached his employment contract with Core and Main. Counts IV and V assert that DSG tortiously interfered with the contractual relationship between Core and Main and McCabe and with Core and Main's prospective contractual relationships.

In July 2021, Defendants moved to dismiss Core and Main's complaint for failure to state a claim on which relief can be granted. Alternatively, Defendants moved for summary judgment as to Core and Main's duty-of-loyalty claim. The Court granted Defendants' motion to dismiss all claims except Count I. Core and Main subsequently dismissed Count I voluntarily and appealed the December 29, 2021 Order to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit reversed the Court's decision as to Counts III, IV and V[1] and remanded the case for further proceedings. The Court then vacated the December 29, 2021 Order as it pertained to Counts III, IV and V, and ordered Defendants to respond to the remaining counts pursuant to the Federal Rules of Civil Procedure.

Defendants have now filed a second motion to dismiss Counts III, IV and V. In a letter response filed with the Court, Core and Main argued that the second motion to dismiss was improperly before the Court as it was a motion for reconsideration filed without leave and requested the Court strike the second motion to dismiss. Because Core

---

[1] Specifically, the Eighth Circuit reversed the Court's holding that the Noncompetition Agreement superseded the noncompetition restriction of the Employment Agreement.

and Main did not file a motion to strike, the Court declined that request and allowed Core and Main to raise its argument in its opposition memorandum.

Core and Main then filed an amended complaint in an attempt to moot the second motion to dismiss. However, because Core and Main was uncertain whether it was allowed to file an amended complaint without the Court's permission, Core and Main also moved to amend the complaint. Defendants oppose the motion to amend and move to strike the amended complaint from the record.

## ANALYSIS

I.    **Amendment of the Complaint**

Core and Main contends that, under Rule 15(a)(1)(B), Fed. R. Civ. P., Core and Main is entitled to amend its complaint within 21 days after Defendants filed their second motion to dismiss. Alternatively, Core and Main moves to amend its complaint under Rule 15(a)(2), Fed. R. Civ. P. Defendants contend that Core and Main is not entitled to amend the complaint and should have amended it within 21 days after the first motion to dismiss was filed. Defendants move to strike the amended complaint from the record.

Under Rule 15(a)(1)(B), Fed. R. Civ. P., a party is entitled to amend a pleading once as a matter of course "21 days after service of a responsive pleading or 21 days after service of a [motion to dismiss], whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B); *see also Huffman v. Selecttrucks of Am. LLC*, No. 16-cv-0399 (W/RK), 2016 WL 9405771, at *1 (W.D. Mo. June 27, 2016). But a party is only entitled to a single 21-day period for amending as a matter of course. *Knox v. Rhodes*, No. 08-cv-277-JPG, 2010 WL 1444875, at *2 (S.D. Ill. Apr. 9, 2010) (quoting 3 *Moore's Federal Practice*, § 15.12[3] (Matthew

4

Bender 3d ed.)). "The *earliest* served responsive pleading or motion starts that single period running." *Id.* (quoting 3 *Moore's Federal Practice*, § 15.12[3] (Matthew Bender 3d ed.) (emphasis in original)).

The Court rejects Core and Main's amended complaint. Defendants filed their first motion to dismiss nearly two years ago. The authority on which Core and Main relies is distinguishable from the case at hand. Core and Main fails to provide any legal support for its argument that a new 21-day period began to run after Defendants filed a second motion to dismiss.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) requires the court to "freely give leave" to amend "when justice so requires." *Id.* Although this is a liberal standard, parties do not have an absolute right to amend at any time. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A district court appropriately denies leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (quotation omitted).

Core and Main does not provide any argument as to why leave should be given to amend the complaint. Instead, Core and Main addresses the Eighth Circuit's opinion remanding the case, without ever addressing why "justice so requires" granting the proposed amendment. Moreover, the proposed amendment does not address the issues

5

raised in Defendants' motion to dismiss, and allowing amendment of the complaint would only further delay any resolution of this matter. Accordingly, Core and Main's motion to amend the complaint is denied.

## II.     Motion to Dismiss

Core and Main argues that the motion to dismiss is improperly before the Court because Defendants' motion is a motion for reconsideration filed without leave of Court. Defendants contend that the second motion to dismiss is not a motion for reconsideration because Defendants previously raised these arguments, but the Court did not address them.

Under Local Rule 7.1(j), "a party must not file a motion to reconsider" unless the party has first obtained permission from the Court. D. Minn. LR 7.1(j). To obtain permission to file a motion for reconsideration, the party "must show compelling circumstances," and file and serve a letter of no more than two pages requesting" permission to file the motion for reconsideration. *Id*. Compelling circumstances include those where reconsideration is necessary to "correct manifest errors of law or fact or to present newly discovered evidence." *Fuller v. Hafoka*, No. 19-cv-886 (PJS/BRT), 2020 WL 5350270, at *1 (D. Minn. Sept. 4, 2020). "A party cannot use a motion to reconsider as a vehicle to reargue the merits of the underlying motion." *Id.* (quotations omitted). Likewise, Rule 12, Fed. R. Civ. P., prohibits a party from filing "another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

Defendants present several of the same arguments that they raised in their first motion to dismiss and subsequently argued on appeal. But neither this Court nor the Eighth

6

Circuit addressed the merits of Defendants' alternative arguments. And neither case law nor the Federal Rules of Civil Procedure bar the filing of a second motion to dismiss in this context. The Court will consider the arguments that Defendants raise here. *See Walzer v. Muriel Siebert & Co.,* No. 04-cv-5672 (DRD), 2010 WL 4366197, at *10 (D.N.J. Oct. 28, 2010) (providing that a "[c]ourt may consider such motions in cases where it did not examine the substance of the plaintiff's claims on the previous motion to dismiss" (internal citations omitted)).

To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, establish a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, the district court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff may not rely on, nor may a district court consider, legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678-79.

Although matters outside the pleadings generally may not be considered when deciding a motion to dismiss, a district court may consider documents necessarily embraced by the pleadings. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). Materials are necessarily embraced by the pleadings when a complaint alleges the contents of the materials and no party questions their authenticity. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). For instance, the contract on which a

7

breach-of-contract claim rests ordinarily is embraced by the pleadings. S*ee Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014).

  A.  **Breach-of-Contract**

    1.  **Signature Requirement**

Defendants maintain that the signature of Core and Main's CEO was a condition precedent to the Employment Agreement's enforcement, and because the CEO failed to sign the contract, the Employment Agreement is unenforceable. Core and Main does not dispute that the contract lacked the CEO's signature. But Core and Main contends that the Employment Agreement was operative because McCabe accepted the contract's benefits despite the lack of a signature.

A condition precedent "is one which is to be performed before the agreement of the parties becomes operative." *Lake County v. Molan*, 269 Minn. 490, 131 N.W.2d 734, 740 (1964). "A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." *Id.*

Defendants' argument as to the enforceability of the contract is unavailing. Despite the absence of the CEO's signature, McCabe proceeded to work for Core and Main, and he accepted the benefits conferred by the Employment Agreement for nearly four years. "It is well established that the party seeking to enforce a written agreement need not have signed the agreement if [the party] agreed to the contract and acted in conformity therewith." *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1056 (D. Minn. 2001) (citing *Poser v. Abel*, 510 N.W.2d 224, 228 (Minn. Ct. App. 1994)); *Taylor v. More*, 195 Minn.

448, 452 (1935). Core and Main is the party seeking to enforce the Employment Agreement against McCabe, the party who signed it. Nothing in the record suggests that McCabe did not intend to be bound by the contract without the CEO's signature. *Webb Pub. Co. v. Fosshage*, 426 N.W.2d 445, 449 (Minn. Ct. App. 1988) (citing 1 *Corbin on Contracts* § 31 (1963)). As such, Defendants' argument that the Employment Agreement is unenforceable because it lacked the CEO's signature fails.

### 2. Legitimate Interest to Justify the Employment Agreement's Restrictive Covenants

Defendants argue that Core and Main fails to allege any legitimate business interest that could justify the Employment Agreement's restrictive covenants. Core and Main maintains that it has properly alleged a legitimate business interest to justify the restrictive covenants.

Noncompete agreements are "looked upon with disfavor, cautiously considered, and carefully scrutinized." *Amano McGann, Inc. v. Klavon*, No. A21-0237, 2021 WL 5442339, at *2 (Minn. Ct. App. Nov. 22, 2021) (quoting *Bennett v. Storz Broad. Co.*, 270 Minn. 525, 533, 134 N.W.2d 892, 898 (1965).) A noncompete agreement is enforceable when it is (1) necessary to protect the employer's business or goodwill, (2) is not more restrictive than is reasonably necessary considering "the nature and character of the employment" and the duration and geographic scope of the restriction and (3) "not injurious to the public." *Id.* An employment restriction that is broader than what is reasonably necessary to protect the employer's legitimate business is unenforceable. *Id.*

9

The complaint provides that the restrictive covenants were put in place to protect Core and Main's goodwill with its longstanding customers. Courts in this District have repeatedly recognized protection of goodwill as a legitimate interest. *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144 n.1 (8th Cir. 2023), *cert. denied*, No. 23-70, 2023 WL 6378541 (U.S. Oct. 2, 2023); *see also Guidant Sales Corp. v. Niebur*, No. 01-cv-1772 (DWF/AJB), 2001 WL 1636502, at *6-7 (D. Minn. Oct. 18, 2001) (collecting published cases). Core and Main has sufficiently pled a legitimate business interest to justify the restrictive covenants, and Defendants' argument to the contrary fails.

### 3. Claims Involving the Non-Compete

Defendants argue that Core and Main has not sufficiently pled claims involving any non-compete, supplier non-solicit, or employee non-solicit violations. But Defendants did not raise this argument in their first motion to dismiss. As such, this argument is barred by Rule 12(g)(2), Fed. R. Civ. P., and the Court need not consider this argument. Fed. R. Civ. P. 12(g)(2).

In summary, the Court denies Defendants' motion to dismiss Core and Main's Breach-of-Contract Claim.

### B. Tortious Interference with Contractual Relations

To state a claim of tortious interference with a contractual relationship, a plaintiff must allege (1) the existence of a contract, (2) that the defendant had knowledge of the contract, (3) that the defendant intentionally procured the breach of the contract, (4) that the defendant lacked justification for doing so and (5) that damages resulted therefrom. *Snowden v. Sorensen*, 75 N.W.2d 795, 799 (Minn. 1956). Defendants argue that Core and

Main's tortious-interference claim fails because Core and Main did not plead the existence of an enforceable contract.

Because the Court has concluded that Core and Main plausibly pled that McCabe's employment agreement is an enforceable contract, Defendants' argument in support of dismissing the tortious-interference-with-contractual-relations claim fails.

### C.     Tortious Interference with Prospective Contractual Relations

Defendants contend that the facts Core and Main alleges are insufficient to support a claim for tortious interference with prospective contractual relationships.

To state a claim for tortious interference with prospective contractual relationships, a plaintiff must allege (1) that the plaintiff had a reasonable expectation of economic advantage, (2) that the defendant knew of the plaintiff's reasonable expectation, (3) that defendant intentionally interfered with the plaintiff's reasonable expectation, (4) that the defendant's interference was either independently tortious or in violation of a state or federal statute or regulation, (5) that it is reasonably probable that the plaintiff would have realized the economic advantage or benefit absent the defendant's action and (6) that the plaintiff sustained damages. *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014).

Core and Main alleges that it reasonably expected prospective sales relationships with certain customers. DSG allegedly knew of the relationships and intentionally interfered with those relationships by hiring McCabe to allegedly solicit current and prospective Core and Main customers. Core and Main also alleges that DSG's interference with McCabe's Employment Agreement was independently tortious and that Core and

11

Main suffered damages. The Court concludes that Core and Main's allegations are sufficient to state a claim for tortious interference with prospective contractual relationships and denies Defendants' motion to dismiss.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1. Plaintiff Core and Main's motion to amend, (Dkt. 138), is **DENIED**;

2. Defendants' motion to strike, (Dkt. 153), is **GRANTED** and the Amended Complaint, (Dkt. 135) is **STRICKEN** from the record; and

3. Defendants' motion to dismiss, (Dkt. 123), is **DENIED**.

Dated: October 25, 2023                s/Wilhelmina M. Wright
                                       Wilhelmina M. Wright
                                       United States District Judge